# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT COOKEVILLE

| | |
|---|---|
| **ROBERT GERALD REEVES** ) | |
| ) | **Case No. 2:25-cv-00036** |
| **v.** ) | **Magistrate Judge Holmes** |
| ) | |
| **COMMISSIONER OF SOCIAL SECURITY** ) | |

**To:    The Honorable Waverly D. Crenshaw, Jr., United States District Judge**

### REPORT AND RECOMMENDATION

Plaintiff Robert Gerald Reeves filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 13), to which Defendant SSA has responded (Docket No. 21) and Plaintiff has replied (Docket No. 22). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 15.) Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 13) be **GRANTED IN PART**.

### I.    INTRODUCTION

This is Plaintiff's third appeal to this Court following denials of his DIB and SSI applications by the SSA. In a prior Report and Recommendation, Magistrate Judge Newbern summarized the procedural history of Plaintiff's case as follows:

> Reeves applied for DIB and SSI on August 16, 2012, alleging that he has been disabled by a back injury and unable to work since August 30, 2010. The Commissioner denied Reeves's applications initially and on reconsideration. At Reeves's request, an administrative law judge (ALJ) held a hearing regarding his

applications on August 6, 2014. The ALJ issued a written decision denying Reeves's applications on October 31, 2014, and the Social Security Appeals Council denied Reeves's request for review.

Reeves filed a complaint in this Court appealing the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Complaint, *Reeves v. Soc. Sec. Admin.*, No. 2:16-cv-00114 (M.D. Tenn. Dec. 29, 2016), ECF No. 1. The Court found that the ALJ violated SSA regulations by "fail[ing] to account for [Reeves's] acknowledged moderate limitations in concentration, persistence and pace" in determining Reeves's residual functional capacity. *Reeves v. Berryhill*, No. 2:16-cv-00114, 2018 WL 1547856, at *2 (M.D. Tenn. Mar. 5, 2018), *report and recommendation adopted*, 2018 WL 1535462 (M.D. Tenn. Mar. 29, 2018) (*Reeves I*). Specifically, the Court found that the residual functional capacity's "purported restriction of maintaining [concentration, persistence, and pace] for two hours at a time is, in fact, no restriction at all, because a normal workday schedule anticipates maintaining [concentration, persistence, and pace] for two hours at a time." *Id.* The Court therefore granted Reeves's motion for judgment on the administrative record and remanded his DIB and SSI applications to the Social Security Administration for further consideration. *Reeves I*, 2018 WL 1535462, at *1.

On remand, the Social Security Appeals Council vacated the Commissioner's prior decision and remanded Reeves's applications to the ALJ for further proceedings consistent with this Court's order. The same ALJ held a second hearing regarding Reeves's DIB and SSI applications on October 4, 2019. The ALJ issued a second written decision denying Reeves's DIB and SSI applications on January 31, 2020. Reeves filed written exceptions to the ALJ's second decision, and the Social Security Appeals Counsel remanded the case for reconsideration by a different ALJ. . . .

On July 6, 2021, the ALJ issued a written decision finding that Reeves was not disabled within the meaning of the Social Security Act and applicable regulations and denying his claims for DIB and SSI. (AR 586-603.) . . . The Social Security Appeals Council denied Reeves's request for review on June 15, 2022, making the ALJ's decision the final decision of the Acting Commissioner.

(Transcript of the Administrative Record (Docket No. 7) at 1650–51 (citations omitted).) [1] *See also*

*Reeves v. Soc. Sec. Admin.*, No. 2:22-cv-00037, 2023 WL 5339003, at *1–3 (M.D. Tenn. Aug. 2, 2023).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2

In her Report and Recommendation, Judge Newbern found that the ALJ had failed to provide an adequate explanation to support his conclusion in step five that Plaintiff could perform "conveyor belt and quota driven work" while having a "moderate limitation in his ability 'to perform at a consistent pace without an unreasonable number and length of rest periods.'" (AR 1663.) Accordingly, Judge Newbern recommended that the SSA's decision be vacated and remanded for further administrative proceedings. (AR 1663–64.) The District Judge accepted the recommendations and remanded the matter to the SSA. (AR 1648.)

Following this remand, an ALJ held an in-person hearing on May 16, 2024, at which Plaintiff appeared with a representative and testified. (AR 1616–41.) Shortly after, on May 30, 2024, the ALJ denied Plaintiff's claim in a written decision. (AR 1552–83.) On March 21, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1542–45.) Plaintiff then timely commenced this civil action pursuant to 42 U.S.C. § 405(g). (Docket No. 1.)

## II. THE ALJ'S FINDINGS

In the May 30, 2024 decision, the ALJ included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since August 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Degenerative disc and sacroiliac disease, status post lumbar and sacroiliac surgeries; right knee disorder; right shoulder disorder; persistent depressive disorder; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

3

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry, push and pull 10 pounds occasionally, and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and walk for two hours. The claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch and crawl; and can occasionally balance as defined by the Selected Characteristics of Occupations, in the Dictionary of Occupational Titles. The claimant with his bilateral upper extremities can frequently reach overhead, and can frequently handle and finger. The claimant can tolerate occasional exposure to dangerous hazards, such as unprotected heights, and dangerous moving machinery. The claimant can understand, remember and complete simple instructions and tasks, but not complex detailed or executive level instructions and tasks. The claimant can concentrate and persist on simple tasks for at least two hours at a time, but should have no fast paced work such as on an assembly line, or work with production quota requirements. The claimant cannot concentrate and persist on complex detailed or executive level tasks for at least two hours at a time. The claimant can acceptably relate with co-workers and supervisors on a frequent basis, and with the public on an occasional basis; and can adapt to occasional changes in a routine work setting.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 29, 1988, and was 21 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 1556–83.)

4

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV.    DISCUSSION AND CONCLUSIONS OF LAW

### A.    Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.*

Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. The ALJ's Five-Step Evaluation of Plaintiff

At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2012 and had not engaged in substantial gainful activity since August 30, 2010, the alleged onset date. (AR 1556.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc and sacroiliac disease, status post lumbar and sacroiliac surgeries; right knee disorder; right shoulder disorder; persistent depressive disorder; and generalized anxiety

disorder. (AR 1556–57.) Nevertheless, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1557–61.) At step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain exertional and non-exertional limitations. (AR 1561–81.) Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including table worker, hand bander, and addresser. (AR 1581–83.)

Therefore, the ALJ concluded that Plaintiff had not been under a disability from August 30, 2010, the alleged onset date, through May 30, 2024, the date of the decision. (AR 1583.)

**C.     Plaintiff's Assertion of Error**

Plaintiff makes two assertions of error: (1) the ALJ failed to incorporate certain limitations from consultative psychological examiner Linda Blazina, Ph.D. in Plaintiff's RFC, despite giving Dr. Blazina's opinion "some weight"; and (2) the jobs the ALJ relied upon at Step 5 are obsolete, inconsistent with the RFC, or otherwise unavailable. (Docket No. 14 at 14–19.) Plaintiff asks the Court to reverse the SSA's decision and remand the matter to the SSA for either a directed finding of disability and calculation of benefits or further administrative proceedings. (*Id.* at 19.)

1.     <u>Opinion of Linda Blazina, Ph.D.</u>

On March 22, 2023, Dr. Blazina conducted a mental status examination of Plaintiff during a telehealth appointment. (AR 2281–86.) Dr. Blazina and Plaintiff discussed his history, activities of daily living, and functional activities. Dr. Blazina then relied on her examination findings, Plaintiff's function report, and her prior psychological evaluation from 2013 to diagnose Plaintiff with persistent depressive disorder and generalized anxiety disorder. She provided the following mental assessment of Plaintiff's ability to engage in work-related activities:

7

> Mr. Reeves' ability to understand, remember, and carry out short simple instructions does not appear impaired. His ability to understand, remember, and carry out more complex detailed instructions is believed to be moderately impaired at this time as he has some difficulty recalling new information. **His attention and concentration skills are at least moderately impaired at present and may be more so during periods of more intense pain and heightened anxiety.**
>
> His social interaction abilities are believed to be moderately impaired due to irritability and his report that he tends to avoid people and does not really socialize to any extent outside of the home. His ability to adapt to change in a work routine and tolerate normal workplace stress is considered to be at least moderately impaired due to his psychological issues.

(AR 2285 (emphasis added).)

In his decision, the ALJ found that Plaintiff had the RFC to perform sedentary work with certain exertional and non-exertional limitations. (AR 1561.) In assessing Plaintiff's RFC, the ALJ considered Plaintiff's allegations and hearing testimony, the medical record evidence, and the medical opinion evidence. The ALJ specifically limited Plaintiff's ability to concentrate and persist, which concerns the ability to "focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(3). The ALJ found that Plaintiff can concentrate and persist for at least two hours at a time, but only on "simple tasks" and not on "complex detailed or executive level tasks." The ALJ also found that Plaintiff should not have any "fast paced work," including assembly line work or work with production quota requirements. The ALJ explained these concentration and persistence limitations as follows:

> On March 22, 2023, the claimant was once again seen by Linda Blazina, Ph.D. for a psychological consultative examination. This time Dr. Blazina diagnosed the claimant with persistent depressive disorder and generalized anxiety disorder. She gave no limitations in understanding, remembering, and carrying out simple instructions; moderate limitations in understanding, remembering, and carrying out more complex detailed instructions. He had moderate limitations in attention and concentration skills; moderate limitations in social interaction abilities; and moderate limitations in adaptation (Exhibit 47F). I addressed this opinion in the opinion section, with my assigning the claimant all moderate B criteria limitations.

8

At the May 16, 2024, hearing, when I asked the claimant about any mental difficulties, he said that he was offered medication for depression, but it made him even more depressed and so he stopped taking it. The representative asked him if he had trouble focusing and he said yes because of his pain (May 16, 2024, Hearing Testimony). The claimant also expressed this to Dr. Blazina during her psychological consultative examination of the claimant, where from his function report he wrote that he has constant pain, that his pain causes stress, and that he cannot focus or concentrate. He told Dr. Blazina that he had chronic pain issues and stated that these are constant and intense. Nevertheless Dr. Blazina assigned moderate limitations in attention and concentration and may be more so during periods of more intense pain and heightened anxiety (Exhibit 47F). I assigned moderate limitations for the claimant in maintaining concentration, persistence and pace, limiting the claimant to doing this with only simple work where Dr. Blazina opined that the claimant's ability to understand, remember, and carry out short and simple instructions did not appear impaired. Dr. Blazina when opining about attention and concentration did not specify whether this was on simple work or complex detailed work. By limiting the attention and concentration to simple work, and furthermore no work that was fast paced or quota driven, this would appear consistent with Dr. Blazina's opinion.

* * *

Indeed, specifically, given the limited mental health evidence of record showing primarily no more than modest abnormalities in concentration, persistence, and pace present on psychological consultative evaluations, but with otherwise adequate thought process and content, intelligence, and judgment, as compared against the claimant's limited mental health treatment, normal attention during that limited mental health treatment, and lack of significant attention or cognitive complaints to other providers, as well as compared to the mental opinion evidence finding no "marked" or "extreme" mental functioning limitations, as discussed in detail below, I find this evidence provides substantial support for deciding the claimant can only concentrate and persist on simple tasks for at least two hours at a time, but should have no fast paced work such as on an assembly line, or work with production quota requirements and cannot concentrate and persist on complex detailed or executive level tasks for at least two hours at a time.

(AR 1574–75.) With respect to Dr. Blazina's opinion, the ALJ afforded it "some weight." (AR 1580.) He agreed with her diagnoses and moderate mental limitations but nevertheless included in the RFC the concentration and persistence limitations set forth above.

In his motion, Plaintiff argues that the ALJ accepted all of Dr. Blazina's moderate limitations but did not account for them in the RFC. (Docket No. 14 at 14–16.) In particular, he

contends that the RFC does not account for "increased difficulties with concentration and attention during periods of more intense pain." Plaintiff acknowledges that the ALJ is not required to adopt all of Dr. Blazina's findings but argues that the ALJ is required to explain why he relied on certain findings and not others.

In response, the SSA contends that the ALJ did offer the required explanation that Plaintiff believes is missing. (Docket No. 21 at 3-4.) The SSA points to the ALJ's explanation, as set forth above, that he limited Plaintiff's concentration and pace abilities to "simple work where Dr. Blazina opined that the claimant's ability to understand, remember, and carry out short and simple instructions did not appear impaired." (AR 1575.) The SSA also points to the ALJ's explanation that Dr. Blazina did not specify whether her concentration and pace limitations were on simple work or on complex, detailed work, which is why he included the limitation to "simple work" and restricted Plaintiff from "fast paced work," including assembly line work or work with production quota requirements.

Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any

10

inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

When evaluating medical opinion evidence to formulate the RFC, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include: (1) supportability, (2) consistency, (3) the provider's relationship with the claimant, (4) the provider's specialization, and (5) other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a "persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two factors have been described as follows:

> In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. . . . Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio September 12, 2023) (citations omitted).

These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. *Id.* § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-

11

02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

The Court finds that the ALJ properly evaluated Dr. Blazina's opinion by discussing the supportability and consistency of the opinion in a way that allows the Court to understand why the ALJ found the opinion to be mostly persuasive. Tellingly, Plaintiff does not argue that the ALJ's discussions of the opinion's supportability or consistency are deficient. Instead, Plaintiff argues that the ALJ erred by failing to account for Dr. Blazina's finding that Plaintiff had increased difficulties with concentration and attention during periods of intense pain. However, the ALJ clearly addressed why he did not adopt Dr. Blazina's findings. (AR 1574–75.) He stated that Dr. Blazina did not clarify if her concentration limitations were for "simple" or "complex detailed" work, so he limited the RFC accordingly. (AR 1574 ("By limiting the attention and concentration to simple work, and furthermore no work that was fast paced or quota driven, this would appear

12

consistent with Dr. Blazina's opinion.").) The ALJ also stated that the limitations he included in the RFC were meant to address Plaintiff's psychological impairments, including pain. Accordingly, the ALJ found that Plaintiff had the RFC to concentrate and persist for at least two hours at a time, but only on "simple tasks" and not on "complex detailed or executive level tasks." He also excluded Plaintiff from "fast paced work such as on an assembly line, or work with production quota requirements."

An "ALJ is not required to include every limitation recommended by the medical sources." *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. 2024). Rather, as Plaintiff acknowledges, an "ALJ must meaningfully explain why certain limitations are not included in the RFC determination, especially when such limitations are set forth in opinions the ALJ weighs favorably." *Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (citations omitted). The Court therefore finds that the ALJ sufficiently explained why he did or did not rely on certain portions of Dr. Blazina's opinion and rejects Plaintiff's first assertion of error.

2.      The ALJ's Step Five Finding

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including table worker, hand bander, and addresser. (AR 1581–83.) Plaintiff argues that the first two jobs, table worker and hand bander, are inconsistent with the RFC's limitations, including that Plaintiff can only frequently perform handling and fingering and that Plaintiff cannot perform assembly line work. (Docket No. 14 at 17–19.) Plaintiff also argues that the third job, addresser, cannot be counted towards the number of jobs used to determine whether other work exists in significant numbers in the national economy. (*Id.* at 17.)

13

In its response, the SSA agrees that it erred in its analysis in step five. (Docket No. 21 at 4.) It concedes:

> At step five, there are unresolved apparent conflicts between two of the occupations the ALJ relied on and the Dictionary of Occupational Titles (DOT), which does not comport with the requirements of Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, which was in effect at the time the hearing decision was issued.

(*Id.* at 5.) The SSA argues, however, that the appropriate remedy is remand for further administrative proceedings to reconsider Plaintiff's ability to perform other work existing in significant numbers in the national economy at step five. It argues that Plaintiff's request for the Court to reverse the SSA's decision and award payment of benefits is not compelling because the case "needs further development and explanation at step five." (*Id.* at 5–6.)

Ordinarily, when an ALJ has committed reversible error, remand for further consideration is favored over an award of benefits unless there is no conflicting evidence about the severity of the claimant's impairments. *Cassandra R. v. Comm'r of Soc. Sec.*, No. 23-10824, 2024 WL 3274774, at *2 (E.D. Mich. Jul. 2, 2024) (citing *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934 (6th Cir. 2018); *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). However, remand for an award of benefits may be appropriate when the SSA has had opportunities to deny benefits but has repeatedly failed to do so properly. *See, e.g.*, *Samantha K. v. Comm'r of Soc. Sec.*, No. 3:23-CV-268, 2024 WL 2826434 (S.D. Ohio June 4, 2024), *report and recommendation adopted*, No. 3:23-CV-268, 2024 WL 3163954 (S.D. Ohio June 24, 2024) ("The Commissioner is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standards and gathers evidence to support its conclusion."); *Cassandra R.*, 2024 WL 3274774, at *2–3; *Donahue v. Massanari*, 166 F. Supp. 2d 1143, 1148 (E.D. Mich. 2001); *Emmendorfer v. Comm'r of Soc. Sec.*, No. CV 20-10123, 2021 WL 850559, at *5 (E.D. Mich. Feb. 16, 2021), *report and recommendation adopted*, No. CV 20-10123, 2021 Wl 843144 (E.D. Mich.

14

Mar. 5, 2021); *Yoder v. Comm'r of Soc. Sec.*, No. 10-14941, 2011 WL 6308313, at *7 (E.D. Mich. Dec. 16, 2011) ("Since the Commissioner has had two opportunities to deny Plaintiff's benefits in a legal fashion and Plaintiff has endured significant delay, remand for an award of benefits is warranted here.").

The Court finds that remand for an award of benefits is warranted in this case. Plaintiff's application for DIB and SSI was first filed on August 16, 2012, and therefore has been pending for nearly fourteen (14) years. As detailed above, Plaintiff's case was first remanded in 2018 when the Court found that the RFC's "purported restriction of maintaining [concentration, persistence, and pace] for two hours at a time is, in fact, no restriction at all, because a normal workday schedule anticipates maintaining [concentration, persistence, and pace] for two hours at a time." (AR 1650–51). After Plaintiff's case made its way back to this Court, it was remanded for a second time in 2023 when the Court found that the ALJ had failed to provide an adequate explanation to support the conclusion in step five that Plaintiff could perform "conveyor belt and quota driven work" while having a "moderate limitation in his ability 'to perform at a consistent pace without an unreasonable number and length of rest periods.'" (AR 1663.) Now, once again, the SSA concedes that "there are unresolved apparent conflicts between two of the occupations the ALJ relied on and the Dictionary of Occupational Titles (DOT), which does not comport with the requirements of Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, which was in effect at the time the hearing decision was issued." (Docket No. 21 at 4.)

Thus, considering that this case has an age of nearly fourteen (14) years and considering the multiple "flawed non-disability decisions" from the SSA, it must be considered an "unusual" case that warrants remand for an award of benefits. *Campbell v. Colvin*, No. 3:15-cv-00363, 2016 WL 6581336, at *3 (S.D. Ohio Nov. 7, 2016), *report and recommendation adopted*, 2016 WL

7496736 (S.D. Ohio Dec. 30, 2016). "Give[n] these circumstances, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter for even more administrative procedures." *Id.* (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for benefits after 2 remands and 3 administrative hearings and finding, "In light of the extensive opinions of treating physicians as to the severity of Gentry's psoriasis and psoriatic arthritis, we conclude that substantial evidence on the record as a whole supports a finding of total disability."); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (other citation omitted)); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("Given the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted."); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review.")).

The Court is not persuaded by the SSA's arguments in favor of remand for further fact finding rather than an award of benefits. *First*, the SSA argues that the Sixth Circuit "has rejected prolonged administrative proceedings as a basis for reversal for payment." (Docket No. 21 at 5–6.) In support of this contention, the SSA cites *Miller v. Comm'r of Soc. Sec.*, in which the Sixth Circuit declined to remand a case for an award of benefits because "the record does not allow us to conclude that the claimant is affirmatively entitled to an award of benefits, despite the prolonged nature of these proceedings." 811 F.3d 825, 840 (6th Cir. 2016). However, as the *Cassandra R.* court stated, the Sixth Circuit's reference to "the record" in *Miller* indicates that the particular details of that case were central to its decision to remand the case for further consideration. 2024

WL 3274774, at *3. As detailed above, the Court finds that the "prolonged administrative proceedings" in combination with the "record" in this case necessitate a remand for an award of benefits. *Second*, the SSA argues that this case needs further development and explanation at step five. (Docket No. 21 at 6.) However, the SSA has had multiple opportunities to develop and explain its step five findings but has failed to adequately meet its legal obligations to do so. As the Court stated in *Samantha K.*, the SSA "is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standards and gathers evidence to support its conclusion." 2024 WL 2826434, at *15. This is precisely what has been occurring here for over a decade. Put simply, "enough is enough." *Emmendorfer*, 2021 WL 850559, at *5.

In light of the SSA's failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the SSA's pattern of erroneous dispositions of the proceedings in this case, a reversal of the ALJ's decision and a judicial award of benefits are warranted. *See Samantha K.*, 2024 WL 2826434, at *15.

## V.     RECOMMENDATION

For the above stated reasons, the undersigned respectfully **RECOMMENDS** as follows:

1.     Plaintiff's motion for judgment on the administrative record (Docket No. 9) be **GRANTED IN PART**;

2.     The Social Security Administration's non-disability finding be **REVERSED**; and

3.     This matter be **REMANDED** to the Social Security Administration under Sentence 4 of 42 U.S.C. § 405(g) for an immediate award of benefits regarding Plaintiff's August 16, 2012 applications for Disability Insurance Benefits and Supplemental Security Income.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the

specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

18